**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| ABDULFATAI A. BASHIRU, ) <br> A# xxx-xx4-603, ) <br> ) <br>         Petitioner, ) <br> ) <br>    vs. ) <br> ) <br> WILLIAM BARR, Attorney General, ) <br> ) <br> CHAD WOLF, Secretary, ) <br> Department of Homeland Security, ) <br> ) <br> ROBERT GUARDIAN, Director, ) <br> ICE Field Office, Chicago, ) <br> ) <br> and ) <br> DAMON ACOFF, ) <br> Warden, Pulaski County Detention Center, ) <br> ) <br>         Respondents. ) | Case No. 20-cv-439-SMY |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Petitioner Abdulfatai A. Bashiru is currently in immigration detention at the Pulaski County Detention Center in Ullin, Illinois ("Pulaski"). He filed a *pro se* Habeas Corpus Petition Pursuant to 28 U.S.C. § 2241, seeking immediate release due to the risk of infection from COVID-19. He also claims that his detention has become indefinitely prolonged due to restrictions on travel to Nigeria during the current pandemic. (Doc. 1). Respondents filed a Response to the Petition (Doc. 10) and Bashiru filed a Reply. (Doc. 14). For the following reasons, Bashiru's request for habeas corpus relief is **DENIED**.

## Background

Bashiru is a 21-year-old native and citizen of Nigeria. He entered the United States

lawfully in February 2017 on a tourist visa but did not depart after it expired. (Doc. 1, p. 3; Doc. 10, p. 2). He married a U.S. Citizen and applied for Lawful Permanent Resident status in March 2018; the application (I-130) was denied in November 2019. (Doc. 10, p. 2-3).

In May 2019, Bashiru was arrested in Indiana and has been held in detention by Immigration and Customs Enforcement ("ICE") ever since. On December 19, 2019, Bashiru was convicted in absentia of felony strangulation, felony intimidation/threat to commit forcible felony, and felony domestic battery committed in the presence of a child under 16. His sentencing was previously postponed and is currently set for June 17, 2020. The female victim is not believed to be Bashiru's wife. (Doc. 10, p. 2). Bashiru's requests for bond were denied by an Immigration Judge ("IJ") in June, August, and October 2019, based on a finding that he poses a danger to the community. (Doc. 10, p. 3).

Bashiru applied for asylum, withholding of removal, and protection under the Convention Against Torture in January 2020, and relief was denied on March 17, 2020. (Doc. 10, pp. 4-5). While the case was pending reconsideration, Bashiru requested voluntary departure. On April 15, 2020, the IJ granted voluntary departure "under safeguard," meaning Bashiru is to remain in detention until he leaves for Nigeria. *See* 8 U.S.C. § 1229c(a); (Doc. 10, pp. 4-5). That order is final as Bashiru waived his right to appeal. (Doc. 1, p. 3). He was expected to leave the U.S. by April 29, 2020, but that date has been extended to August 13, 2020 (the maximum allowable extension) due to conditions related to the COVID-19 global pandemic. (Doc. 10, p. 4).

Because Bashiru's Nigerian passport had expired, the ICE Enforcement & Removal Office ("ERO") requested travel documents from the Nigerian Consulate in April 2020. Issuance of the necessary documents has been delayed because of the consulate's closure due to the pandemic. An ERO official has made regular attempts to ascertain when Bashiru's travel documents may be

made available and was told on May 28, 2020 that the consulate is processing cases. Respondents expected flights to Nigeria to resume by June 7, 2020 and assert that Bashiru will be sent back to his country as soon as his travel documents are obtained. (Doc. 10, p. 5).

In May 2020, the ERO denied Bashiru's request for humanitarian parole due to his fear of exposure to COVID-19 on the bases that he does not suffer from a serious medical condition and that his travel documents were expected in the near future. (Doc. 10, p. 6). Bashiru's medical records reflect that he has been diagnosed with major depressive disorder for which he takes prescribed medication and receives regular mental health services while in detention. (Doc. 10, pp. 6-7). He has not been diagnosed with a respiratory condition but suffers from snoring and postnasal drip which is treated with a prescribed nasal spray. He had a consultation with an ear, nose, and throat specialist who indicated he has sleep apnea and enlarged tonsils. He has normal blood sugar readings. *Id.*

Bashiru has been detained at Pulaski since June 2019. (Doc. 10, pp. 7-10; Doc. 10-4). He is housed in C-pod, an all-male dormitory-style unit which can hold up to 50 immigration detainees. It is at less than half capacity. The facility has room for more than 200 ICE detainees but as of June 1, 2020, houses only 62; no new ICE detainees have been received for the last two months. The immigration detainees do not mingle with criminal detainees, and each housing group stays within its own unit. Detainees and staff at Pulaski have been issued N-95 masks; hand soap and cleaning supplies are distributed daily, hand sanitizer and hygiene items are provided regularly, sanitizing of common areas is done on a regular basis, and detainees are informed about hygiene practices to mitigate risk of infection. All male detainees have been tested for COVID-19.

A male detainee in B-pod tested positive for COVID-19 on or about May 27, 2020, when

he was hospitalized for an unrelated condition. (Doc. 10, pp. 11-12). All the B-pod detainees were then re-tested for COVID, and several asymptomatic individuals tested positive. As of June 1, 2020, there are a total of 16 active COVID cases among ICE detainees including those who were in B-pod, all of whom are in medical isolation. No staff members are currently positive for COVID.

## Discussion

Bashiru asserts that his removal to Nigeria is not likely to be accomplished in the foreseeable future because of COVID-19-related travel restrictions and delays. He argues that as a result, his ongoing detention has become unreasonable and unauthorized. Additionally, he claims that his "severe mental disorder" and breathing problems place him at heightened risk should he contract COVID-19, and that his exposure to the virus while in detention constitutes an irreparable injury. (Doc. 1, p. 2; Doc. 14, p. 3). He states that if released, he would live with relatives who are U.S. Citizens, and will comply with the voluntary departure order as soon as travel becomes available.[1]

Respondents maintain that Bashiru is lawfully detained, and that travel documents to permit him to return to Nigeria should be forthcoming during the month of June 2020, when they expect flights to resume. They argue that habeas corpus is not the proper vehicle to assert claims relating to conditions of confinement, that conditions at Pulaski do not violate Bashiru's constitutional rights, and that he has not shown that his health conditions place him at undue risk of serious consequences should he contract COVID-19.

Courts may consider individualized challenges to the constitutionality of immigration detention. *See Jennings v. Rodriguez*, 138 S. Ct. 830, 851-52 (2018); *Nielsen v. Preap*, 139 S. Ct.

---

[1] Bashiru includes a letter dated April 10, 2020, from his U.S. Citizen wife, stating that he will live with her in Indianapolis, Indiana, if he is released from custody. (Doc. 14, p. 12).

4

954, 972 (2019) ("Our decision today on the meaning of that statutory provision [§ 1226(c)] does not foreclose as-applied challenges—that is, constitutional challenges to applications of the statute as we have now read it."); *Preiser v. Rodriguez*, 411 U.S. 475, 484, 500 (1973); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *Vargas v. Beth*, 378 F. Supp. 3d 716, 722-23 (E.D. Wisc. 2019) (federal courts have jurisdiction over due process challenges to detention) (collecting cases). And it has long been established that detainees are entitled to procedural due process in relation to restraints on their liberty. *Demore v. Kim*, 538 U.S. 510, 523 (2003); *Zadvydas*, 533 U.S. at 690. At the same time, the government has a legitimate interest in protecting the community from any danger posed by a detainee and in ensuring his or her appearance at immigration proceedings. As such, when considering a habeas petition challenging detention, the Court must determine whether the particular detention at issue is reasonably related to one of these governmental interests – the government must justify continued civil confinement with "clear and convincing evidence" that the detainee is a flight risk or poses a danger to the community. *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). *See also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

While the ordinarily "brief" detention associated with pending removal proceedings is constitutionally permissible (*see Demore*, 538 U.S. at 528-31, observing that detention under § 1226(c) lasts for less than 90 days "in the majority of cases"), detention that becomes indefinite raises "serious constitutional concerns." *Zadvydas*, 533 U.S. at 682 (detention longer than 6 months during attempts to execute final order of removal was presumptively unreasonable). In assessing the constitutionality of continued immigration detention, courts consider a number of relevant factors, including: the length of detention to date; whether it exceeds the time the detainee was in prison for the crime that prompted removal proceedings; the likely duration of future detention; the conditions of detention; whether civil detention is meaningfully different from

punitive detention; whether delays in the removal proceedings were caused by the detainee or the government; and the likelihood that removal proceedings will be successful in light of any colorable defenses to removal. *See Vargas v. Beth*, 378 F. Supp. 3d 716, 727 (E.D. Wisc. 2019); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858 (D. Minn. 2019).

Here, Respondents have produced clear and convincing evidence that Bashiru poses a danger to the community as well as a flight risk. Thus, his continued detention is reasonable. Bashiru stands convicted by an Indiana state court of criminal charges involving actual or threatened physical injury to another person. The recency of his criminal conduct and its violent nature demonstrate that he would be a danger to the public if released.[2] His upcoming sentencing would provide an incentive for flight. Further, Bashiru overstayed his visa after its August 2017 expiration, indicating a propensity for noncompliance with immigration requirements. While Bashiru abandoned his attempts to obtain legal permission to remain in the U.S. and requested voluntary departure, an Immigration Judge has reasonably determined on three occasions that it was appropriate to keep Bashiru in custody while arrangements were made to repatriate him.

The Court recognizes that the conditions of Bashiru's confinement at Pulaski place him at risk of exposure to the COVID-19 virus. However, Bashiru has not been diagnosed with any medical condition that makes him particularly vulnerable to infection or to a heightened risk of complications according to Center for Disease Control ("CDC") guidelines. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. To be sure, depressive disorder is a serious condition, but according to the CDC, it is not one that places a person at unusual risk from COVID-19. *Id.* Bashiru quotes a general statement by the

---

[2] The Court does not consider Bashiru's minor conduct charge while at Pulaski to be relevant to the determination of whether he poses a danger to the public if released from detention. (Doc. 14, p. 4; Doc. 15, pp. 1-2)

World Health Organization that "People with [severe mental disorders] are at greater risk than the general population for exposure to infectious disease" (brackets in original), but he does not provide any documentation supporting the premise that a person with depressive disorder is at an elevated risk for COVID-19 infection.[3]  (Doc. 14, p. 2).

While Bashiru is housed in a congregate setting, his unit is less than half full, thus allowing him and other detainees to practice social distancing to mitigate their risk of infection.  Hand sanitizer, soap, and masks have been provided to all detainees, and every male detainee was tested for COVID-19 exposure in May 2020.  While several detainees in a different pod from Bashiru's tested positive in May 2020, they were placed in medical isolation and there is no suggestion that Bashiru had contact with any of them.  In sum, Bashiru has not established that the conditions of his confinement amount to punishment or otherwise violate his constitutional rights.

Bashiru claims that the length of his detention, which now exceeds 12 months, has become unconstitutionally prolonged.  It is notable that Bashiru's detention by ICE began when he was arrested on criminal charges on which he was later convicted, and during most of his time in custody, he was engaged in proceedings to seek lawful status to remain in the U.S.  Only on April 15, 2020 did Bashiru abandon those efforts by requesting voluntary departure.  As such, the length of his detention following the order granting voluntary departure now approximates two months. Ordinarily, removal should be accomplished within 90 days.  *See* 8 U.S.C. § 1231(a)(1)(A). While the application for Bashiru's travel documents from the Nigerian Consulate has been delayed due to closures necessitated by the COVID-19 pandemic, Respondents have been informed that the

---

[3] Bashiru cites the source for his quotation as "Ex. A-5, *Management of physical health conditions in adults with severe mental disorders*, World Health Organization (2018), https://apps.who.int/iris/bitstream/handle/10665/275718/9789241550383-eng.pdf (Excerpt). (Doc. 14, p. 9).  The date of that document obviously predates the 2019 COVID-19 outbreak; the publication sets forth best practices and guidelines for improving health care for persons with severe mental disorders.

application should be processed soon, and flights to Nigeria are expected to resume in June 2020. These developments indicate that he is likely to be released and returned to Nigeria in the near future and undercut Bashiru's claim that his detention has been and will be unconstitutionally prolonged.

## Disposition

For the foregoing reasons, Petitioner Abdulfatai A. Bashiru's request for habeas corpus relief is **DENIED** and this case is **DISMISSED**. The dismissal is without prejudice to Bashiru filing a future habeas corpus action if the length and/or circumstances of his detention substantially change. The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close this case.

It is not necessary for Petitioner to obtain a certificate of appealability from this disposition of his § 2241 petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000). If he wishes to appeal the dismissal of this action, his notice of appeal must be filed with this Court within 60 days of the entry of judgment. FED. R. APP. P. 4(a)(1)(B). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 60-day appeal deadline. FED. R. APP. P. 4(a)(4). A Rule 59(e) motion must be filed no more than twenty-eight (28) days after the entry of the judgment, and this 28-day deadline cannot be extended. Other motions, including a Rule 60 motion for relief from a final judgment, do not toll the deadline for an appeal.

Should Petitioner file a motion for leave to appeal *in forma pauperis* ("IFP"), the motion must set forth the issues he plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If Petitioner chooses to appeal and is allowed to proceed IFP, he will be liable for a portion of the $505.00 appellate filing fee (the amount to be determined based on his inmate trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan*


*v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch*, 133 F.3d 464, 467 (7th Cir. 1998).

**IT IS SO ORDERED.**

**DATED: June 12, 2020**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**